James DOWNING, Joseph
Lewis, Plaintiffs,

v.

HALLIBURTON & ASSOCIATES,
INC., et al., Defendants.

Civ. A. No. 91–D–1262–N.

United States District Court,
M.D. Alabama, N.D.

Feb. 2, 1993.

Frank W. Riggs and Stephen M. NeSmith, Riggs & NeSmith, Montgomery, for plaintiff and plaintiff intervenor.

John R. Matthews, Joana Ellis Ball, Ball, Matthews & Novak, Montgomery, for Morgan Keegan & Co.

Philip Butler, Scott R. Talkington and Justice Smyth Robinson & Belser, Montgomery, for Wood & Co.

Kenneth Hemphill and Donald R. Harris, Montgomery, for Murry McDonald.

Harry Cole, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for Halliburton & Associates, Inc.

## MEMORANDUM OPINION

DeMENT, District Judge.

This cause if before the Court on defendants', Halliburton & Associates, George M. Wood & Co., and Morgan Keegan & Company motions for summary judgment filed respectively, August 4, 1992; August 5, 1992; and April 24, 1992. Plaintiffs responded on July 1, 1992. For the following reasons, defendants' motions are due to be granted.

### JURISDICTION

Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

## FACTS

In 1986, defendant Murry McDonald began a course of conduct wherein, over a period of approximately two years, he sold stock in Magic Years Child Care and Learning Centers, Inc. to plaintiffs James Downing, head of the accounting department of National Industries (Downing dep. pp.10–12) and in charge of the investment accounts of its president, June Collier (Downing dep. pp. 151–159); and Joseph Lewis, founder of the Alabama Information Network and a co-employee of Downing. (Lewis dep. p. 23). During this time, McDonald was employed in succession by the following stock brokerage firms: Bonham and Company, Halliburton & Associates, George M. Wood & Co. and Morgan Keegan. The plaintiffs contend that in order to induce them into purchasing Magic Years stock, defendant McDonald fraudulently represented to the plaintiffs that magic years was guaranteed to increase in value and that they could not lose anything by investing in it[1]. Plaintiffs are now suing under 18 U.S.C. § 1962(a) and (c), known as the Racketeer Influenced and Corrupt Organizations Act, alleging mail fraud, wire fraud and securities fraud. Further facts are stated and discussed below.

## SUMMARY JUDGMENT STANDARD

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In further elaboration on the summary judgment standard, the Court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). The court is to construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## RICO CLAIMS

The plaintiffs in this cause have asserted a violation of 18 U.S.C. § 1962(a) and (c) known as the Racketeer Influenced and Corrupt Organizations Act (RICO). Subsection (a) makes it unlawful for any "person" who has received income from a pattern of racketeering activity to invest such

---

**1.** The alleged representations stated in the complaint were as follows: (a) That Magic Years was a sound investment; (b) that McDonald had total control Magic Years; and (c) that McDonald could make the investment in Magic Years "work" and that the plaintiffs would not lose anything by investing therein; (plaintiffs amended complaint. p. 4). Plaintiff Lewis alleg-

es that in addition to the above representation made to both plaintiffs, that McDonald also represented to him that John A. Bonham, chief executive officer of the Bonham Company Inc., controlled Magic Years stock and would insure that it was a profitable investment. (complaint in intervention p. 3)

income into any "enterprise" which is engaged in interstate commerce.[2]

Subsection (c) makes it unlawful "for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such an enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt" 18 U.S.C. § 1962(c).

The plaintiffs must prove each and every element before they can recover under the RICO statute. To recover, the plaintiffs must show the existence of (a) a person who engages in (b) racketeering activity; (c) a pattern of racketeering activity; (4) an enterprise and (5) the enterprise must be engaged in "commerce".

The plaintiffs have failed to produce a set of facts which support or prove the existence of an enterprise under 18 U.S.C. § 1962(c) or a pattern of racketeering activity under 18 U.S.C. § 1962(a).

## HALLIBURTON, WOOD AND MORGAN KEEGAN AS A JOINT ENTERPRISE VEL NON UNDER 18 U.S.C. § 1962(c)

■ The plaintiffs claim that the three defendants, Halliburton, Wood and Morgan Keegan together formed a joint enterprise within the RICO statute. The statute defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) explained "enterprise" as follows:

In order to secure a conviction under RICO, the Government must prove both the existence of an enterprise and the connected pattern of racketeering activity. The enterprise is an entity, for pres-

ent purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by statute. 18 U.S.C. section (1) (1976 ed., Supp. Ill). The former is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern or activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

The Eleventh Circuit, using this definition in conjunction with the Fifth circuit's opinion in *United States v. Elliott*, 571 F.2d 880 (5th Cir.1978) has held that "[a] RICO enterprise exists where a group of persons associate, formally or informally, with the purpose of conducting illegal activities." *See also, United States v. Hewes*, 729 F.2d 1302 (11th Cir.1984). "[T]he definite factor in determining the existence of a RICO enterprise was an association of individuals, however loose or informal, which furnishes the vehicle for the commission of two or more predicate crimes." The plaintiffs have failed to show any association, either formally or informally, between Halliburton, Wood and Morgan Keegan which would qualify them as a joint enterprise within the definition found in 18 U.S.C. § 1961(4).

The plaintiffs contend that the common or shared purpose of the three defendants was to "get the plaintiffs' money by selling them falsely pictured Magic Years stock".

**2.** 18 U.S.C. § 1962(a) states in relevant part: It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt *in* which such person has participated as a principal within the meaning of section, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition or any interest in, or the establishment or operation or, any enterprise which affect, interstate or foreign commerce. . . .

However, there is no evidence that these defendants were working together to do this. In fact, there is no evidence that any of these three defendants handled Magic Years stock at the same time, or that McDonald was ever employed by one or more of the defendants at the same time. The only link between the three defendants is that they all at one time employed Murry McDonald and that Murry McDonald was trading Wonder Years stock while in their employment. This alone is not sufficient to establish an association in fact within the *Turkette* or *Elliott* definition.

The only evidence of predicate acts on the part of any of the defendants are those acts committed by the defendant McDonald. The existence of these predicate acts on the part of McDonald first, while employed at Halliburton, then at Wood and then at Morgan Keegan are not sufficient to establish a joint enterprise between the moving defendants.

In *Cooperative de Ahorro y Credito Aguada v. Kidder*, 758 F.Supp.64 (D.Puerto Rico 1991) a case with facts similar to the case at hand, the court used the *Turkette* definition and found no enterprise. In *Kidder*, the plaintiff Cooperative, sued Kidder, Peabody, & Co., Paine Webber Inc., financial services providers, and Almonte, the service representative from whom the plaintiff purchased securities. The plaintiff alleged that Almonte made fraudulent statements to induce it into purchasing securities which he claimed to be low risk, conservative investments. During this time, Almonte was a securities representative, first for Kidder and then for Payne Webber.

In that case, relying on the Supreme Court's definition of "enterprise" in *Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the court found that "[t]he existence of the predicated acts by Almonte, first at Kidder and then at Paine Webber does not, by itself, create any link between Kidder and Paine Webber which would amount to an association in fact." *Kidder*, 758 F.Supp. 64, 74. The court went on to say "the only way in which we could identify Kidder and Paine Webber as

one enterprise would be to associate them in fact through the series of predicate acts that Almonte committed first at one brokerage house and then the other. We would be allowing plaintiff to establish an enterprise merely by showing related predicate acts, a result which the [Supreme Court] disallows. There is no reasonable reading of the facts, as alleged, by which we could find that Kidder and Paine Webber worked together to commit predicate criminal acts as an 'ongoing organization' nor that they 'function[ed] as a continuing unit.' *Turkette, supra.*" 758 F.Supp. at 74.

The same is true in this case. There is no reasonable reading of the facts that would support a finding that Halliburton, Wood and Morgan Keegan worked together to commit any predicate acts as an "ongoing organization" nor that they functioned as "a continuing unit." Proof of acts by McDonald goes to the element of pattern of racketeering activity and not to enterprise. The "enterprise is not the pattern of racketeering activity it is an entity separate and apart from the pattern it engages." *Turkette, supra.* To allow the plaintiffs to prove association in fact through the series of predicate acts of McDonald committed at the separate brokerage firm would be allowing the plaintiffs to establish an enterprise merely by showing related predicate acts, which is contrary to the Supreme Courts definition and would conclude that one is guilty by mere association.

The plaintiffs have failed to prove "enterprise" under the 1962(c) claim as to the defendants Halliburton, Wood and Morgan Keegan therefore, summary judgment is hereby GRANTED in favor of these defendants as to the 1962(c) claims.

### CLAIMS UNDER 1962(a)

18 U.S.C. § 1962(a) makes it unlawful for any "person" who has received income from a pattern of racketeering activity to invest such income into any "enterprise" which is engaged in interstate commerce.

■ Section 1962(a) does not require a "person" distinct from the "enterprise" in order to have liability as explained by the

first circuit in *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 31 (1st Cir.1986):

> Section 1962(a) does not require a relationship between the person and the enterprise as does section (c) and so it does not require the involvement of two separate entities. Applied to the facts of this case, section 1962(a) would prohibit [the brokerage house], the person, from using ill-gotten gains in [the brokerage house], the enterprise. 793 F.2d at 31.

Applied to the case at bar, Halliburton, the "person" could be liable under section 1962(a) if it invested funds fraudulently obtained in a pattern of racketeering in Halliburton, the "enterprise"; Wood, the "person", could be liable if it invested funds fraudulently obtained in a pattern of racketeering in Wood the "enterprise"; and Morgan Keegan the "person" could be liable if it invested funds in Morgan Keegan fraudulently obtained through a pattern of racketeering in Morgan Keegan the "enterprise." Therefore, Halliburton, Wood and Morgan Keegan are potential RICO defendants under section 1962(a) as the "person[s]" who invested ill-gotten gains in an enterprise, assuming that the plaintiffs can prove the remaining elements of a violation of § 1962(a), one of which is a pattern of racketeering activity.

## PATTERN OF RACKETEERING ACTIVITY

Another essential element which the plaintiffs must prove in a RICO action is that the defendant engaged in certain "prohibited activities," each of which requires proof of a "pattern of racketeering activities." 18 U.S.C. § 1962. A "pattern" requires "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). The plaintiff must prove that he or she was "injured in his business or property by reason of a violation" of the statute. 18 U.S.C. § 1964(c).

■ The test for determining whether a pattern exists for purposes of RICO is set out in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In *H.J. Inc.*, the court, after reviewing the legislative history of the statute, held that "in order to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." 492 U.S. at 239, 109 S.Ct. at 2900.

For the reasons stated above, the Court refuses to find that Halliburton, Wood and Morgan Keegan together formed an enterprise. Therefore, if any predicate acts occurred, they occurred with three separate "enterprises", first with Halliburton, then with Wood and then with Morgan Keegan. To recover then, the plaintiffs must show a pattern of racketeering activity between each of the separate "enterprises" and McDonald. Because we have found each to be capable of being only a separate "enterprise", the relevant time frame to search for a pattern of racketeering activity is also divided into three different time frames, when each "enterprise" was involved with McDonald. The plaintiff must show a pattern of at least two acts of racketeering by McDonald while at Halliburton prior to the account being transferred to Wood; a pattern of at least two acts of racketeering by McDonald after the account was transferred to Wood; and a pattern of at least two acts of racketeering after the account was transferred to Morgan Keegan. To do this the court must analysis the activity of McDonald as it relates to each individual defendant.

## PLAINTIFF DOWNING

### HALLIBURTON

The only acts by McDonald while at Halliburton alleged by the plaintiff to form the basis of liability are four purchases and three sales of Magic Years stock which occurred between April 23, 1987 and September 25, 1987. This was a total of seven predicate acts over a five month period. (plaintiffs amended complaint exhibit "A")

### WOOD

The alleged acts by McDonald while at Wood & Co. are four purchases and one

sale of Magic Years stock from March 24, 1988 through July 22, 1988. This was a total of five predicate acts over a five month period. (plaintiffs amended complaint, exhibit "A")

## MORGAN KEEGAN

The plaintiff has not pleaded any predicate acts on the part of Morgan Keegan which could establish liability on the part of Morgan Keegan. There is no evidence that a single transaction occurred on Downing's account at Morgan Keegan or that Morgan Keegan had earned or received commissions during the period of time it held the securities.[3]

## PLAINTIFF LEWIS

### HALLIBURTON

The only acts by McDonald affecting Lewis while at Halliburton which are alleged by the plaintiff are four purchases and one sale of Magic Years Stock from April 9, 1987 to November 20, 1987. These acts constitute five predicate acts in an eight month period. (complaint in intervention, exhibit "A")

### WOOD & COMPANY

The plaintiff alleges that, while at Wood, McDonald made seven sales and four purchases of Magic Years Stock from March 28, 1988 to August 10, 1988. This constitutes a total of eleven predicate acts in a six month period. (complaint in intervention, exhibit "A")

### MORGAN KEEGAN

The evidence shows that the last transaction by McDonald for Lewis was August 10, 1988. (Complaint in Intervention, Exhibit "A") That was two years before McDonald went to work for Morgan Keegan. The plaintiff failed to show that Morgan Keegan ever held an account in the name of Lewis or that Lewis ever bought or sold securities through Morgan Keegan.

Now that the court has established the acts that are involved, it must now apply the Supreme Court test articulated in *H.J. Inc.* in order to establish a "pattern" for RICO purposes.

To establish a "pattern" for RICO purposes, the plaintiff must show a relationship between the acts and the threat of continuing activity. "The term pattern itself requires the showing of a relationship between the predicates" and of "the threat of continuing activity," 492 U.S. at 239. Applying the Supreme Courts' relationship and continuity test to find a pattern of racketeering activity, the Court reaches the following results.

■ The relationship test is defined on the terms of the relationship of the defendants' acts one to another: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 492 U.S. at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e)).

The twelve acts[4] performed by McDonald while at Halliburton are related as they apply to each plaintiff. They appear to have the same purpose, result, participants, victim and method of commission. The court also finds that the sixteen acts performed while employed at Wood meet the relationship test. Since no predicate acts have been alleged against Morgan

---

**3.** The plaintiffs claim that Morgan Keegan assumed the liability of Wood when they purchased Wood & Company and therefore, the predicate acts of Wood apply to Morgan Keegan. Assuming this to be is true then the liability of Morgan Keegan will depend on the liability of Wood & Co.

**4.** For the purpose of this opinion only, the court has combined the acts alleged by each plaintiff. This would equal twelve predicate acts while at Halliburton and sixteen predicate acts while at Wood. Combined, the acts would not meet the relationship test since the participates and the victims would be different. However, they are combined here in order to give the plaintiff the maximum number of predicate acts within the scheme to establish continuity. Nonetheless, even combined, the court finds that the total acts of the defendant McDonald do not reach a pattern of racketeering within the meaning of the statute.

Keegan the relationship test cannot be applied.

Finding, for purposes of Summary judgment, that a relationship does exist, the court must now look to the question of continuity and this is where the plaintiffs have failed to meet their burden.

The Supreme Court in *H.J. Inc.* emphasized the duration of the criminal activity as being a paramount consideration in the analysis. *Kidder*, 758 F.Supp. at 77, "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned with long term criminal conduct." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2901.

Plaintiffs fail to establish continuity as to any of the three moving defendants in this case.

## HALLIBURTON

■ Even when combining the acts of McDonald as to both plaintiffs, the period of time the acts were committed only amounts to eight months. The Court finds the commission of the twelve acts all completed within an eight-month period do not constitute an ongoing, continuous criminal "pattern of racketeering". In addition, the Court finds no threat of future alleged criminal conduct. Halliburton and Associates closed its stock operation on November 30, 1987. (Halliburton dep., pp. 114–124). Shortly thereafter, Downing left their employment taking the plaintiffs' accounts with him. Since Halliburton no longer deals in stocks and no longer has any connection with the plaintiffs' accounts. There is no threat of Halliburton continuing any alleged criminal activity. Therefore, the RICO claim under 1962(a) against Halliburton cannot stand.

5. As to plaintiffs' claim that Morgan Keegan assumed the liabilities when it purchased the assets of Wood & Company, even if the court

## WOOD

■ Likewise, we cannot find continuity on the part of Wood and Company. The sixteen acts committed over a period of six months do not constitute an ongoing, continuous criminal "pattern of racketeering." Like Halliburton, Wood is no longer in the stock business, they no longer employ McDonald and they no longer have any business relationship with the plaintiffs. The predicate acts involved occurred only over a few months and there is no threat of future alleged criminal conduct on the part of Wood. Therefore, the RICO claim under 1962(a) cannot stand.

## MORGAN KEEGAN

■ As stated above, there have been no predicate acts alleged by the plaintiff regarding Morgan Keegan. Morgan Keegan never handled any transaction of Magic stocks. Hence, the RICO claim under 1962(a) cannot stand against Morgan Keegan.[5]

Therefore, defendants' Halliburton, Wood and Co. and Morgan Keegan's motions for summary judgment are hereby GRANTED under plaintiffs' 1962(a) claim.

## AIDER AND ABETTOR LIABILITY

The plaintiffs contend that Halliburton and Wood are liable as an aider and abettor in McDonald's scheme.

■ In order to establish aider and abettor liability in a civil RICO case the plaintiff must first meet all the elements of the RICO claim. "We now join those courts, and hold that if all of RICO's other requirements are met, an aider and abettor of two predicate acts can be civilly liable under RICO." *Petro-Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3rd Cir. 1987); *see also, Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475 (5th Cir.1986); *In re Sahlen & Associates Inc. Securities Lit.*, 773 F.Supp. 342 (S.D.Fla.1991).

accepts this argument, since no liability was found as to Wood & Company, no liability attaches to Morgan Keegan.

In *Armco*, a case involving mail fraud, the court held that in order to establish liability as an aider and abetter the plaintiff must prove that the defendant was associated with the mailing of the bogus invoices, participated in it as something he wished to bring about, and sought by his actions to make it succeed. 782 F.2d at 485. The court found in that case that to prove the defendant's association with the scheme, he must show that the defendant shared in the criminal intent of the principals. Proof of mere negligent acquiescence in the fraud is insufficient. "There must be evidence that Conklin committed an overt act designed to aid in the success of the venture" 782 F.2d at 485.

■ The plaintiffs in this case have failed to offer any evidence to support a claim for aider and abettor liability. First, as stated above, the plaintiffs have failed to prove all the elements of a RICO claim as to Halliburton, Wood and Morgan Keegan. The law states that for a defendant to be liable as an aider and abettor in a civil RICO case, the plaintiff must first establish all the other elements of the RICO claim. *See, Petro–Tech*, 824 F.2d at 1356.

In addition, the plaintiffs have not established that Halliburton, Wood or Morgan Keegan were ever associated with the misrepresentations made by McDonald, that they participated in making the alleged false statements, or that there were any actions on the part of these defendants to help McDonald succeed. The plaintiffs claim that the defendants researched the Magic Years stock, knew or should have known that the company was in financial trouble, yet still allowed McDonald to sell the stock and did not reveal this information to the plaintiffs. At most, these activities by the defendants would amount to a "mere negligent acquiescence in the [alleged] fraud" which is insufficient to establish aider and abetter liability. 782 F.2d at 485. Moreover, there is no evidence that the defendants "committed an overt act designed to aid in the success of [the McDonald] venture." Ibid.

Plaintiffs' have failed to establish that Halliburton and Wood are responsible as aiders and abettors. Therefore, summary judgment is GRANTED in favor of Halliburton and Wood.