Simeon **MORIN**, et al., Plaintiffs,

v.

Barry H. **TRUPIN**, et al., Defendants.

Michael P. **ALBERTI**, M.D., et al., Plaintiffs,

v.

Barry E. **TRUPIN**, et al., Defendants.

Nos. 88 Civ. 5743 (RWS), 90 Civ. 3475 (RWS).

United States District Court, S.D. New York.

Oct. 8, 1993.

Fink Weinberger, P.C., New York City, for plaintiffs (Neal A. DeYoung, Stephen E. Powers, and Farrell C. Glasser, of counsel).

D'Amato & Lynch, New York City, for defendants Mintz, Fraade & Zeiger, Frederick M. Mintz and Alan Fraade (Robert E. Kushner and Stephen F. Willig, of counsel).

McDonough Marcus Cohn & Tretter, P.C., New York City, for Stuart Becker & Company, P.C. (Diane K. Kanca, of counsel).

## OPINION

SWEET, District Judge.

Plaintiffs in the matter of *Alberti v. Trupin* (the "Alberti Plaintiffs") have moved pursuant to Rule 15, Fed.R.Civ.P., for leave to amend their Third Amended Complaint and

to file a Fourth Amended Complaint. Plaintiffs in the related action of *Morin v. Trupin* (the "Morin Plaintiffs"), by the same motion, request the Court to grant them leave to amend their Third Amended Complaint. By these amendments, the Plaintiffs seek, among other things, to plead claims for relief under the Racketeer Influenced and Corrupt Organizations Act (RICO) against Frederick Mintz, Alan Fraade, and the law firm of Mintz Fraade & Zeiger, P.C. (collectively, the "Mintz Fraade Defendants") as aiders and abetters of primary violations under 18 U.S.C. §§ 1962(a) and (b) ("Section 1962(a)" and "Section 1962(b)") and as primary violators of 18 U.S.C. §§ 1962(c) and (d) ("Section 1962(c)" and "Section 1962(d)").

The Mintz Fraade Defendants have filed a motion to dismiss the Alberti Plaintiffs' Fourth Amended Complaint as alleged against them, which motion was made conditional upon the court's granting the Alberti Plaintiffs leave to file their Fourth Amended Complaint. Stuart Becker & Co., P.C., also defendants in this matter, have submitted an affidavit in opposition to the Alberti and Morin Plaintiffs' motions, but did not join in the Mintz Fraade Defendants' motion to dismiss. For the reasons set forth below, the Court grants the Alberti Plaintiffs leave to file a Fourth Amended Complaint and the Morin Plaintiffs leave to amend their complaint. Defendants' motion to dismiss is granted in part and denied in part.

### The Parties

The Alberti Plaintiffs are investors in a New York limited partnership known as the Sacramento Office Park Associates, organized to own, operate and lease a two-building office park complex in Sacramento, California referred to as the Butano Buildings (the "Butano Property").

The Morin plaintiffs are investors in other real estate limited partnerships, referred to as the 118, 119, 119M, 130 and 218 syndications, formed to divide up and offer to the public interests in office buildings and warehouses in a variety of locations.

Mintz, Fraade & Zeiger, P.C. is a New York law firm which is alleged to have acted as counsel to partnerships and corporations controlled by Barry H. Trupin ("Trupin"), who is the founder and promoter of all the tax shelters involved in these actions. Mintz, Fraade & Zeiger has been named as a defendant in both the *Morin* and *Alberti* actions.

### Background

The *Alberti* and *Morin* actions have been the subject numerous opinions issued by this Court, familiarity with which is assumed. *See, e.g., Morin v. Trupin,* 711 F.Supp. 97 (S.D.N.Y.1989); *Morin v. Trupin,* 728 F.Supp. 952 (S.D.N.Y.1989); *Morin v. Trupin,* 738 F.Supp. 98 (S.D.N.Y.1990); *Morin v. Trupin,* 747 F.Supp. 1051 (S.D.N.Y.1990); *Morin v. Trupin,* 778 F.Supp. 711 (S.D.N.Y. 1991); *Morin v. Trupin,* 799 F.Supp. 342 (S.D.N.Y.1992); *Morin v. Trupin,* 832 F.Supp. 93 (S.D.N.Y.1993); *see also Ahmed v. Trupin,* 781 F.Supp. 1017 (S.D.N.Y.1992); *Ahmed v. Trupin,* 809 F.Supp. 1100 (S.D.N.Y.1993); *Aquino v. Trupin,* 833 F.Supp. 336 (S.D.N.Y.1993). Argument on the present motions was heard on September 29, 1993, and the motions were considered fully submitted as of that date.

Briefly, in both actions the Plaintiffs have alleged that Trupin organized, ran, and syndicated limited partnerships in the businesses of real estate and equipment leasing in order to generate profits and tax losses for limited partners. Certain of the tax benefits allegedly promised to investors in the equipment leasing trusts have apparently been disallowed by the I.R.S. All of the commercial properties have been foreclosed upon. The plaintiffs in both actions have filed suit alleging violations of Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10(b)–5, violations of RICO, 18 U.S.C. § 1962(a)–(d), and various common law claims.

On September 15, 1993, (the "September 15th Opinion") this Court granted the Mintz Fraade Defendants' motion to dismiss the Plaintiffs' claims under Section 1962(c) as alleged against them in light of the recent decision of the United States Supreme Court in *Reves v. Ernst & Young,* — U.S. —, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). In addition, the Plaintiffs' other claims under the RICO statute were dismissed pursuant to Fed.R.Civ.P. 12(b)(6). *See Morin v. Trupin,*

832 F.Supp. 93, 1993 WL 369054 (S.D.N.Y. September 15, 1993). The Plaintiffs now move the Court for leave to amend their complaint under Fed.R.Civ.P. 15(a) in order to correct the flaws in their RICO pleadings that provoked their dismissal, and to bring before the Court information that was lately unearthed through discovery.

**Discussion**

### I. *Leave to Amend under Rule 15(a)*

In accordance with Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (quoting Rule 15(a)); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990). The Court in *Foman* added further that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

Plaintiffs claim that the timing of this motion is occasioned by the September 15 Opinion. Plaintiffs had sought to incorporate certain facts related to their RICO claims into their pleadings through the submission of a joint pretrial Order. The dismissal of their RICO claims in the September 15 Opinion made this strategy untenable, and plaintiffs now seek to bring these facts before the Court in a Fourth Amended Complaint.

This Court considered an analogous motion in *Journal Publishing Co. v. American Home Assurance Co.*, 771 F.Supp. 632 (S.D.N.Y.1991). In that case, after denying cross motions for summary judgment, the court ordered the parties to submit a pretrial order. During the preparation of the order, the defendants refused their consent to the inclusion of additional claims based on actions taken and facts that had come to light during the discovery process. The court allowed the plaintiffs to amend their complaint to include the newly discovered allegations.

The Mintz Fraade Defendants' principal opposition to this motion is that the Fourth Amended Complaint fails to state legally sufficient RICO claims. "A trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979). As discussed below, however, the Fourth Amended Complaint states a cause of action under 18 U.S.C. § 1962(d).

Stuart Becker & Co. P.C. protest that responding to the claims raised in the Fourth Amended Complaint will subject them to additional expense. Particularly in light of the resolution of the Mintz Fraade Defendants' motion to dismiss, however, any burden that the defendants may bear in responding to these claims "hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits." *S.S. Silberblatt, Inc.*, 608 F.2d at 43.

The plaintiffs' motion to amend their pleadings in the *Alberti* action and file a Fourth Amended Complaint is therefore granted. The plaintiffs in the *Morin* action are granted leave to amend their pleadings to incorporate factual matters obtained through discovery, to the extent that such amendments are consistent with the following resolution of the Mintz Fraade Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) and 9(b).

### II. *Standards for Dismissal Under Rule 12(b)(6)*

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan*, 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here and set forth below are taken from the Plaintiffs' complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion.

A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2905, 106 L.Ed.2d 195 (1989).

## III. RICO

The substantive provisions of RICO, 18 U.S.C. § 1962(a)-(d), outlaw four types of racketeering-related activities. The Court of Appeals for the Second Circuit has described the statute in the following manner:

> Section 1962(a) prohibits using income received from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce. Section 1962(b) proscribes the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity. Section 1962(c) prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity. Section 1962(d) proscribes conspiring to violate subsection (a), (b), or (c).

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 n. 1 (2d Cir.1990).

Section 1964(c) of Title 18 of the U.S.C. provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." To state a claim under this section, a plaintiff must allege, in addition to the defendant's violation of 18 U.S.C. § 1962, that there has been some injury to his or her business or property by reason of a defendant's violation of § 1962. *See Hecht*, 897 F.2d at 23; *Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir.1989); *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F.Supp. 493, 518 (S.D.N.Y.1987). In addition, the United States Supreme Court has interpreted § 1961(5), which defines "pattern of racketeering activity" for purposes of RICO, to require, in addition to a showing of "at least two acts of racketeering activity," allegations supporting continuity plus relationship between or among the acts. Continuity is both a closed and open-ended

concept, referring either to a closed period of repeated conduct, or to past conduct which threatens repetition. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

### A. Plaintiffs' Aiding and Abetting Claims Under Section 1962(a)

■ In the first claim of the Fourth Amended Complaint, Plaintiffs do not reallege primary violations against the Mintz Fraade Defendants under Section 1962(a) of RICO. Rather, they allege that the Mintz Fraade Defendants aided and abetted Barry Trupin and certain Trupin affiliated defendants in using the proceeds of racketeering activities to operate an alleged RICO enterprise. *See, e.g.*, Plffs.' Mem. at 10; Neal de Young's Aff. in Supp. at 4.

Section 1962(a) provides, in relevant part, that:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section Two, Title 18 of the U.S.C., entitled "Principals," provides, in relevant part, that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

■ Pursuant to Section 1962(a) and 18 U.S.C. § 2, a defendant's aiding and abetting the commission of a predicate act may constitute a predicate act for purposes of establishing liability under RICO. *See United States v. Bonanno Org. Crime Family of La Cosa Nostra*, 683 F.Supp. 1411, 1428 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir.1989).

Since 1962(a) is violated by one who commits the requisite predicate acts either as a principal or as an aider or abetter, some

courts have held that *"[i]f all other requirements are met,* an aider and abettor of two predicate acts can be civilly liable under RICO." *Department of Economic Dev. v. Arthur Andersen & Co.,* 747 F.Supp. 922 (S.D.N.Y.1990) (quoting *Petro–Tech, Inc. v. Western Co. of N. Am.,* 824 F.2d 1349, 1356 (3d Cir.1987) (emphasis added)); *United States v. Bonanno Org. Crime Family of La Cosa Nostra,* 695 F.Supp. 1426, 1431 (E.D.N.Y.1988); *Laterza v. American Broadcasting Co.,* 581 F.Supp. 408, 412 (S.D.N.Y. 1984).

The imposition of civil liability under Section 1962(a) on aiders and abettors of predicate acts does not relieve plaintiffs of the requirement of alleging that the aider or abettor received income derived from a pattern of racketeering activity and invested it in the acquisition of any interest in, or the establishment or operation of, a RICO enterprise. *See Zola v. Gordon,* 685 F.Supp. 354, 375 (S.D.N.Y.1988) ("in pleading [aiding and abetting liability under RICO], all of RICO's other requirements must be met"); *Downing v. Halliburton & Assocs., Inc.,* 812 F.Supp. 1175, 1182 (M.D.Ala.1993) ("In order to establish aider and abetter liability in a civil RICO case the plaintiff must first meet all the elements of the RICO claim.").

*Perez–Rubio v. Wyckoff,* 718 F.Supp. 217 (S.D.N.Y.1989), involved an alleged scheme to defraud a group of citizens of the Philippines who sought to make investments in this country. The plaintiffs claimed that one Ossorio, an employee of a securities investment company, had defrauded them of certain funds, which he had used to maintain the operation of an alleged RICO enterprise. Ossario had been aided and abetted in this alleged fraud by a number of lawyers, who had also been named as defendants. *See Perez–Rubio,* 718 F.Supp. at 242.

This Court, considering the language of Section 1962(a), found the provision prohibited only the use of income derived from a pattern of racketeering activity to acquire an interest in a RICO enterprise. Since the plaintiffs did not allege that any of the aiding and abetting defendants had used racketeering-derived income to acquire an interest in the alleged enterprise, the court dismissed the plaintiffs' 1962(a) claim against all of the aiding and abetting defendants. *Perez–Rubio,* 718 F.Supp. at 242.

In *In re Sahlen & Assocs., Inc. Secs. Litig.,* 773 F.Supp. 342 (S.D.Fla.1991), the Southern District of Florida considered a motion to dismiss a complaint against a public accounting firm which had served as an independent auditor for parties involved in an alleged RICO enterprise. The complaint alleged that the accounting firm had aided and abetted the other defendants' violations of Section 1962(a) by knowingly concealing the true financial condition of the involved enterprises. The court held that these allegations were sufficient to state a claim under Section 1962(a) that the accountants had aided and abetted at least two underlying predicate acts. *Sahlen,* 773 F.Supp. at 368.

The plaintiffs' complaint, however, did not allege that the accountants had invested money derived from the pattern of racketeering activity into a RICO enterprise. The court explained, in dismissing the aiding and abetting claims, that aiding and abetting a predicate act makes a party a principal under 1962(a), but that a principal is only liable under this Section when he or she illegally obtains monies from a pattern of racketeering activity and invests these monies into an enterprise. *Id.* at 368–69. A defendant can not, therefore, be liable for aiding and abetting a violation of Section 1962(a) unless they have themselves invested income derived from a pattern of racketeering activity. *Cf. id.* at 369 n. 36.

The Plaintiffs in the present action either misconstrue the scope of aiding and abetting liability under Section 1962(a), or are asking us to extend it to encompass not only the aiding and abetting of predicate acts, but the aiding and abetting of the investment of proceeds derived by others from racketeering activities. Plaintiffs have not alleged how the Mintz, Fraade Defendants "reinvested" their fees or any other funds derived from racketeering activities. Instead, they allege a number of methods through which the Mintz Fraade Defendants aided and abetted other defendants to obtain and reinvest funds derived from racketeering.

The Second Circuit has warned that "the potentially broad reach of RICO poses a danger of abuse [through] attempts to apply the statute to situations for which it was not primarily intended." *United States v. Huber*, 603 F.2d 387, 395–96 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *see also Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1150 (10th Cir.) (Section 1962(a) should not be expanded beyond the terms of the subsection's own language), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *United States v. Anderson*, 626 F.2d 1358, 1365 n. 11 (8th Cir.1980) ("Expanding the scope of RICO beyond congressional intent is judicial legislation violative of the separation of powers doctrine established in the United States Constitution."), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

Therefore, Plaintiffs' invitation to expand aiding and abetting liability under Section 1962(a) is declined. Such an expansion could potentially force all who give counsel on investment matters to trace the source of their advisees' funds, lest they become liable for aiding and abetting the investment of funds obtained through racketeering activities. In view of the repeated judicial warnings against extending RICO beyond the scope of its language, Section 1962(a) will not be given so sweeping a reach.

The cases cited by the Plaintiffs are not to the contrary. In *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 412 (S.D.N.Y.1984), this Court dismissed a complaint alleging RICO aiding and abetting liability because the plaintiffs' allegations were not properly pled. The court did not discuss whether the claims were brought under 1962(a), nor did it discuss whether a claim for aiding or abetting a violative investment would state an aiding and abetting claim under this section. In *Department of Economic Dev. v. Arthur Andersen & Co.*, 683 F.Supp. 1463 (S.D.N.Y.1988), the court held that the plaintiffs had made out a claim of aiding and abetting alleged civil RICO violations, but did not indicate whether these violations were brought pursuant to 1962(a), and did not discuss the requirement of alleging the investment of money for a claim of aiding and abetting a violation of 1962(a). *United States v. Bonanno Org. Crime Family of La Cosa Nostra*, 683 F.Supp. 1411 (E.D.N.Y.1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989), allowed for aiding and abetting liability under RICO, but in that case each of the 1962(a) claims for relief alleged that the named defendants had received income from the racketeering activity and had invested that income in the alleged enterprise. *See id.* at 1438. In *Petro–Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349 (3d Cir.1987), the Third Circuit merely held that there could be aiding and abetting liability under Section 1962(a) if all of RICO's other requirements are met.

Since the Plaintiffs still have not alleged how the Mintz Fraade Defendants "reinvested" their fees or any other proceeds from racketeering activities to gain control any enterprises, the first claim of the Fourth Amended Complaint against the Mintz Fraade Defendants is dismissed.

## B. *Plaintiffs' Aiding and Abetting Claims Under Section 1962(b)*

Section 1962(b) provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

■ The September 15 Opinion held that the Plaintiffs' complaint failed to plead the necessary elements of a § 1962(b) claim against the Mintz, Fraade Defendants, because it failed to allege that these Defendants had acquired or maintained an interest in any enterprise through a pattern of racketeering activity. *See Morin v. Trupin*, 832 F.Supp. 93, 98–99 (S.D.N.Y.1993). The second claim of the Fourth Amended Complaint, rather than realleging primary violations of Section 1962(b) against the Mintz Fraade Defendants, asserts that the Mintz Fraade Defendants are liable under 1962(b) as aiders and abetters.

Unlike Section 1962(a), Section 1962(b) contains no reference to 18 U.S.C. § 2, which defines principals of criminal acts to include those who aid or abet the commission of a crime. The judicially-implied civil right of action for aiding and abetting violations of Section 1962(b), therefore, stands on a less solid foundation than that implied for violations of 1962(a). *See* Judith L. Rosenthal, Comment, *Aiding and Abetting Liability for Civil Violations of RICO,* 61 Temp.L.Q. 1481, 1505–06 (1988). Since aiding and abetting liability under Section 1962(b) lacks even the tenuous textual basis of aiding and abetting liability under Section 1962(a), the reach of this provision will not be expanded beyond that clearly intended by Congress.

Section 1962(b) prohibits the acquisition or maintenance of any interest in or control of an enterprise through a pattern of racketeering activity. *See Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990). Courts interpreting Section 1962(b) draw a distinction between the predicate acts and the acquisition or maintenance of an interest in a RICO enterprise. *See, e.g., United States v. Bonanno Org. Crime Family of La Cosa Nostra,* 695 F.Supp. 1426, 1432 (E.D.N.Y. 1988) (considering allegation that Government's Section 1962(b) claim failed to allege connection between pattern of racketeering by defendant and defendant's acquisition of interest in alleged enterprise). Certain courts in this Circuit, including this one, have entertained civil 1962(b) claims alleging that the defendant aided and abetted the requisite predicate acts. *See, e.g., Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 136–37 (S.D.N.Y.1991); *United States v. District Council,* 778 F.Supp. 738 (S.D.N.Y. 1991).

In *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217 (S.D.N.Y.1989), discussed *supra,* the plaintiffs also brought a claim under Section 1962(b) against Ossario and the lawyers that had allegedly aided and abetted him in his fraudulent scheme. Since the plaintiffs did not allege that the aiding and abetting defendants *had an interest* in the enterprise, the plaintiffs' 1962(b) claim was dismissed against all of the aiding and abetting defendants. *Perez–Rubio,* 718 F.Supp. at 242.

As opposed to Section 1962(a), there is no statutory basis to impose civil liability under Section 1962(b) on aiders and abettors, particularly where the plaintiffs have failed to allege the other elements of a violation of this provision: that the defendant acquired or maintained an interest in a RICO enterprise through a pattern of racketeering activity. In the second claim for relief in their Fourth Amended Complaint, the plaintiffs fail to rectify the flaws identified in their 1962(b) claims in the September 15th Opinion. To wit, they fail to allege that the Mintz Fraade Defendants have acquired or maintained an interest in any enterprise through a pattern of racketeering activity. The second claim of the Fourth Amended Complaint is, therefore, dismissed.

### C. *The Plaintiffs' Claims Under Section 1962(c)*

The Fourth Amended Complaint's third claim against the Mintz Fraade Defendants alleges violations of Section 1962(c).[1] The issue before the Court with regard to the Plaintiffs' 1962(c) claims is whether or not the Fourth Amended Complaint adequately alleges that the Mintz Fraade Defendants conducted or participated directly or indirectly in the conduct of the alleged enterprise's affairs under the "operation or management" test set out in *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). *Cf. Strong & Fisher, Ltd. v. Maxima Leather, Inc.,* 1993 WL 277205, 1993 U.S.Dist. LEXIS 10080 (S.D.N.Y. July 19, 1993) (granting motion to dismiss 1962(c) cause of action by application of *Reves* ).

In *Reves,* the Supreme Court held that the "operation and management" test was the

---

1. The Fourth Amended Complaint's fourth claim also alleges a Section 1962(c) claims. However, it is identical to the fourth claim previously dismissed, so it requires no further comment.

correct standard for liability under § 1962(c) [2]:

The narrow question in this case is the meaning of the phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs"

. . . .

Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. . . . [S]ome part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Reves,* —— U.S. at ——, ——–——, 113 S.Ct. at 1163, 1169–70 (dismissing civil RICO count under § 1962(c) where accounting firm failed to alert shareholders and directors of potential worthlessness of Co-op gasohol plant). "Relying on a dictionary definition of "conduct" as "mean[ing] to lead, run, manage, or direct," the court explicitly rejected the view that 'almost any involvement in the affairs of an enterprise' [would state a claim]." *Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209, 219 (S.D.N.Y.1993) (holding *Reves* standard narrower than existing Second Circuit precedent).

*Reves* did not foreclose the possibility of "outsiders," such as accountants or lawyers, being liable under Section 1962(c) if they are associated with an enterprise and participate in the operation or management of the enterprise's affairs. The decision held, however, that Section 1962(c) has a more limited reach than Section 1962(a) and (b), since subsection (c) is limited to persons "employed by or associated with" an enterprise, while subsections (a) and (b) are not so limited. *Reves,* —— U.S. at ——, 113 S.Ct. at 1173.

The *Reves* Court acknowledged that its reading of 1962(c) would make it difficult to prosecute "outsiders" with no official position within the enterprise, such as the Mintz Fraade Defendants in the instant case. The Court held, however, that the remedy was not to be found in a misreading of 1962(c), but rather in reliance upon the "outsiders"

provisions, subsections (a) and (b). *Id.; see also United States v. Altman,* 820 F.Supp. 794, 795–96 (S.D.N.Y.1993) (dismissing criminal RICO count on the basis of *Reves* ).

Courts considering the liability of outside attorneys under Section 1962(c) since *Reves* have held that such attorneys may be substantially involved in an enterprise's activities without risking liability under Section 1962(c). In *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.,* 832 F.Supp. 585 (E.D.N.Y.1993), the Eastern District of New York granted a summary judgment dismissing Section 1962(c) claims against an outside attorney, Kuehn. The plaintiff held patents to certain vision training devices and had entered into an agreement with an unaffiliated company, Kolinor, to distribute the product. The principals of Kolinor met Kuehn while he was an associate at a New York law firm, after which Kuehn left the firm and established his own practice, with Kolinor as his sole client.

In the course of providing counsel, Kuehn became heavily involved in an alleged fraud perpetrated on the plaintiff, acted to further the scheme, and was aware of its purpose and extent. Despite this extensive and ongoing participation by an outside attorney in his only client's fraudulent activities, the court held that the *Reves* decision required dismissal of the Section 1962(c) claims against Kuehn. The court found that, although Kuehn was more intimately connected to the operation of the alleged enterprise than the accountants in *Reves* had been, his role was still confined to providing legal advice and legal services. Even Kuehn's suggestion to Kolinor that he enter into contract negotiations with the plaintiff in order to mask Kolinor's scheme was found to fall within the realm of legal advice. *Biofeedtrac, Inc.,* 832 F.Supp. at 590–91. Even though he may have intentionally assisted a scheme to defraud, therefore, Kuehn could not be found liable under Section 1962(c). *Id.* at 592.

---

**2.** Section 1962(c) makes it unlawful "for any person employed by or associated with [an interstate] enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs though a pattern of racketeering activity."

In *Strong & Fisher, Ltd. v. Maxima Leather, Inc.,* 1993 WL 277205, 1993 U.S.Dist. LEXIS 10080 (S.D.N.Y. July 19, 1993), an amended complaint alleging violations of Section 1962(c) was dismissed. Citing *Reves,* it was held that, even though the complaint alleged that defendants had substantial persuasive power to induce the alleged enterprise to take certain actions, it did not allege sufficient power to conduct or participate in conducting the alleged enterprise under the test set out in *Reves. See Strong & Fisher Ltd.,* 1993 WL 277205, at *1, 1993 U.S.Dist. LEXIS 10080, at *2–*5.

The third claim of the Fourth Amended Complaint alleges that the Mintz Fraade Defendants were associated with the Sacramento Enterprise through their retention by MHT Corp., the general partner of Sacramento Associates. It further alleges that the Mintz Fraade Defendants participated in the conduct of the Sacramento Enterprise in two ways. First, it alleges that they participated by drafting and mailing private placement memoranda, correspondence, management agreements, and purchase agreements to capacitate the operation of the enterprise.

This allegation amounts to a claim that the Mintz Fraade Defendants, having been retained by parties affiliated with the enterprise, performed a variety of legal services for those parties, which facilitated the operation of the enterprise. As indicated in *Biofeedtrac, Inc.,* providing legal advice and legal services does not constitute participation sufficient to ground an allegation of a violation of Section 1962(c). *See also Nolte v. Pearson,* 994 F.2d 1311, 1317 (8th Cir.1993) (attorneys who prepared allegedly false opinion letters and informational memoranda regarding a music recording leasing program had not participated in "operation or management"); *University of Md. v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993) ("[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"); *Sassoon v. Altgeld, 777 Inc.,* 822 F.Supp. 1303 (N.D.Ill. 1993) (citing *Reves* to hold that attorneys'

drafting of limited partnership offering and provision of legal services to general partners and limited partnership did not constitute operation or management of enterprise that would support liability under Section 1962(c)); *Gilmore v. Berg,* 820 F.Supp. 179, 183 (D.N.J.1993) (attorney who prepared false private placement memoranda regarding limited partnerships not liable under Section 1962(c)).

■ The Plaintiffs' second factual allegation on which they seek to ground their 1962(c) claim is that the Mintz Fraade Defendants directed Bennett Trupin and Stuart Stern, principals in the enterprise, in connection with their signing of certain legal documents, and that these gentlemen had no understanding of the documents they were executing and had completely acquiesced to the Mintz Fraade Defendants' directions. This direction amounted, in some cases, to sending these gentlemen legal documents with attached correspondence which requested that they sign the documents "where indicated." These signed documents were necessary for the operation of the alleged enterprise.

In *Biofeedtrac, Inc.,* Kuehn, on his own volition, suggested that he enter into contract negotiations with the plaintiff for the express purpose of facilitating the operation of the alleged enterprise. In addition, prior to and during the preliminary hearing in *Biofeedtrac, Inc.,* Kuehn suborned perjury from a fellow defendant in order to conceal the workings of the enterprise from the plaintiff and the court. This fellow defendant had no understanding of his legal responsibilities when Kuehn directed him to testify falsely. *See Biofeedtrac, Inc.,* 832 F.Supp. at 588–89.

The Plaintiffs' allegations that the Mintz Fraade Defendants directed certain individuals to the appropriate signature lines in legal documents falls far short of the allegations of operation or management required for Section 1962(c) liability under *Reves.* Even if this Court found that "these defendants had substantial persuasive power to induce management to take certain actions," this is still "not equivalent to having the power to 'con-

duct or participate directly or indirectly in the conduct in the affairs of those corporations.'" *Strong & Fisher Ltd. v. Maxima Leather, Inc.,* 1993 WL 277205, 1993 U.S.Dist. LEXIS 10080 (S.D.N.Y. July 22, 1993). Therefore, the third and fourth claims in the Fourth Amended complaint, as alleged against the Mintz Fraade Defendants, are hereby dismissed to the extent that they allege a violation of 18 U.S.C. § 1962(c).

### D. *Conspiracy Under Section 1962(d)*

■ The September 15 Opinion held that the Plaintiffs had alleged nothing which linked the professional defendants to a Section 1962(d) conspiracy besides the bald assertion that if they committed securities fraud, they must have conspired to do so through a pattern of racketeering activity. *See Morin v. Trupin,* 832 F.Supp. at 99–100. The core of a RICO civil conspiracy is an agreement to commit predicate acts. The complaint, therefore, must specifically allege such an agreement. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990). The Plaintiffs must show that the Mintz Fraade Defendants "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." *Morin v. Trupin,* 747 F.Supp. 1051, 1067 (S.D.N.Y.1990); *see also United States v. Rastelli,* 870 F.2d 822, 832 (2d Cir.), *cert. denied,* 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 283–84 (S.D.N.Y.1991); *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 141 (S.D.N.Y.1991).

The Plaintiffs claim that they recently obtained through discovery information regarding certain meetings among the Mintz Fraade Defendants, Barry Trupin, and other Rothschild executives. Based on this information, the fifth claim of the Fourth Amended Complaint has added allegations that, at these meetings, the Mintz Fraade Defendants knowingly conspired and agreed with each other, Barry Trupin, and the other individual defendants to violate RICO. Further, they allege that the Mintz Fraade Defendants personally committed and agreed to commit a variety of fraudulent and illegal racketeering acts described in the Complaint. These allegations rectify the earlier problems with the 1962(d) conspiracy allegations in the previous Alberti complaints.

In *Aquino v. Trupin,* 833 F.Supp. 336 (S.D.N.Y.1993), this Court held that a Trupin-sired limited partnership which did not anticipate a net profit until the year 2000 was obviously a tax shelter. The plaintiff-investors in that tax shelter, therefore, could not plead loss causation without alleging that they had not received the anticipated tax benefits. *See Aquino v. Trupin,* 833 F.Supp. at 343. The Private Placement Memorandum for the limited partnership involved in the present case indicates that investors could only expect tax losses until 1992. *See* Sacramento PPM at 22. *Aquino* does not, therefore, require dismissal of the present claim.

### *Conclusion*

For the reasons given above, the Court grants the Alberti Plaintiffs leave to file a Fourth Amended Complaint and the Morin Plaintiffs leave to amend their complaint to the extent that such amendments are consistent with the foregoing opinion. Defendants' motion to dismiss is granted with regard to the Fourth Amended Complaint's first, second, and third, and fourth claims for relief as alleged against the Mintz Fraade Defendants. Defendants' motion to dismiss is denied with regard to the Fourth Amended Complaint's fifth claim for relief to the extent that such claim alleges that the Mintz Fraade Defendants conspired to violate RICO in violation of 1962(d).

It is so ordered.